```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION
```

JOYCE O. HILL,                  )
                                )
        Plaintiff,              )
                                )
   v.                           )    No. 4:10 CV 675 DDN
                                )
LINCOLN PROPERTY COMPANY,       )
                                )
        Defendant.              )

## **MEMORANDUM**

This action is before the court on the motion of defendant Lincoln Property Company for summary judgment against plaintiff Joyce O. Hill. (Doc. 14.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) Oral arguments were heard on September 17, 2010.

## **I. BACKGROUND**

Plaintiff commenced this judicial action against defendant in the Circuit Court of St. Charles County, Missouri. (Doc. 1-1 at 3-5; Doc. 4.) Defendant removed the action to this court pursuant to 28 U.S.C. § 1441, relying on diversity jurisdiction, 28 U.S.C. § 1332. (Doc. 1 at ¶ 6.)

In her state court petition, plaintiff alleges that on April 18, 2007, she "was caused to trip on an area of the carpet in the passageway between her bedroom and the living room area" of her apartment. She alleges this area of the carpet was raised which "constituted a dangerous condition" of which defendant knew or should have known. She alleges that this "condition resulted from the placement of a board underneath the carpet of the threshold of the entryway from the hallway into the living room." The petition attributes the alleged condition of the carpet to "negligence of the Defendant." (Doc. 1-1, at 4.) As a result of her fall, plaintiff alleges that her right ankle muscles, ligaments,

tendons, and soft tissues were bruised, confused, sprained, and strained, and plaintiff's right cuboid was fractured. (Id. at ¶¶ 8-9.)

## II. SUBJECT MATTER JURISDICTION

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006). In removed cases such as this one, the district court reviews the pleadings, including the removal petition, pending at the time of removal to determine whether the court has subject matter jurisdiction. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938); see Hull v. Fallon, 188 F.3d 939, 943 n.5 (8th Cir. 1999) (the district court may also look to the notice of removal to determine its jurisdiction). The defendant, as the party invoking jurisdiction, bears the burden of proving that all prerequisites to jurisdiction are satisfied. See In re Business Men's Assurance Co. of Am., 992 F.2d 181, 183 (8th Cir. 1993) (per curiam).

Defendant invokes diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332. Such jurisdiction requires complete diversity of the parties' citizenship and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). There is no dispute that complete diversity of citizenship exists. Plaintiff alleges she is a resident of St. Charles, Missouri, and that defendant is a Texas corporation. (Doc. 1-1, at *1.)

At issue is whether the case involves an amount in controversy that exceeds $75,000. Federal courts must strictly construe the amount in controversy requirement. Snyder v. Harris, 394 U.S. 332, 339 (1969). In this regard, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. In re Minnesota Mut. Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003). Some specific facts or evidence are required to demonstrate that the jurisdictional amount is met. Hill v. Ford Motor Co., 324 F. Supp. 2d 1028, 1036 (E.D. Mo. 2004).

In this case the amount in controversy is based on the damages resulting from plaintiff's personal injury suffered from her fall when

she tripped on the raised carpet in her apartment. She alleges that as a result of her fall, she sustained permanent injury to her right ankle, pain and suffering, and lost wages and income. (Doc. 1-1 at 3-4.) The state court petition seeks recovery of "such sums as will adequately and justly compensate plaintiff for her damages." (Id.)

In its removal notice, defendant alleges that the amount in controversy "is believed to exceed" the $75,000.00 jurisdictional amount. (Doc. 1 at 2.) The removal notice also describes defendant's unsuccessful efforts to discover the monetary extent of the damages plaintiff seeks, including an inquiry into whether plaintiff would stipulate to an amount in controversy less than the required $75,000.00. (Id. at 1-2.) At the hearing held on September 17, 2010, plaintiff's counsel indicated that such a stipulation might be filed. However, no such stipulation has been filed.

The record is sufficient to establish the jurisdictional amount of the amount in controversy between the parties. Aside from plaintiff's allegations that her damages include permanent, serious bodily injury and pain and suffering, plaintiff testified in her deposition that she is unable to work as a result of her injuries, and that she had previously earned between $17 and $20 per hour when needed by several employers. Her deposition testimony was unclear about the number of lost hours claimed by her. (Doc. 23-5 at 31-47.) Plaintiff also testified that her injuries are so severe that she cannot stand for longer than 20 minutes at a time or hold an infant, and that her pain and suffering continue. (Id. at 96, 139-41). Using the allegations in her state court petition that her injuries are permanent and the factual evidence of her testimony, the court agrees with defendant and finds that plaintiff's asserted damages, and the amount in controversy, exceed $75,000, exclusive of interest and costs. Cf. Murray v. Lumiere Place Casino & Hotels, No. 4:10 CV 0458 TCM, 2010 WL 1936179, at *2 (E.D. Mo. May 13, 2010) (case remanded to state court on basis of plaintiff's affidavit that she would not seek recovery of $75,000); Gerbert v. United Rentals (North America), Inc., No. 4:05 CV 717 SNL, 2005 WL 2789332, at *1 (E.D. Mo. Oct. 26, 2005). The court has subject matter jurisdiction over this action.

**III. MOTION FOR SUMMARY JUDGMENT**

Defendant moves for summary judgment on plaintiff's sole claim against it. Fed. R. Civ. P. 56(c); (Doc. 14.) Defendant argues that at least one of several exculpatory clauses contained in contracts between it and plaintiff bar her recovery. Defendant argues that the clauses are enforceable under Missouri law, even if plaintiff did not carefully read them, and encompass the alleged condition and negligence in this action. (Docs. 14, 15.)

Plaintiff responds that the exculpatory clauses are unenforceable because they are contained in contracts of adhesion. She also argues that the alleged condition and negligence otherwise does not fall within the scope of the exculpatory clauses, and that she did not carefully read the contracts. (Docs. 19, 21.)

Defendant replies that the alleged conduct falls within the scope of at least one of the exculpatory clauses. Defendant further argues that the clauses are enforceable, even if the contracts were contracts of adhesion, and are enforceable because plaintiff signed the contracts, even if plaintiff did not carefully read them. (Doc. 17.)

**IV. STATEMENT OF UNDISPUTED FACTS**

Plaintiff, Joyce O. Hill, is a high school graduate who can read English. (Doc. 16 at ¶¶ 11, 15.) Plaintiff received a certificate in business and office education from Redding Area Community College, and a nursing certificate from Upper Banks County, Pennsylvania Community College. (Id. at ¶¶ 12-13.) Plaintiff is currently pursuing a Bachelor's Degree in Science in Nursing through online courses from Excelsior College in Albany, New York. (Id. at ¶ 14.)

On April 21, 2006, plaintiff read and signed an Agreement to Rent or Lease one of defendant's apartments. (Id. at ¶¶ 4-5.) Paragraph 16 of the Agreement to Rent or Lease states:

**16. LIABILITY / DAMAGE RESPONSIBILITY.** Resident agrees to hold Landlord harmless from all claims of loss or damage to property, and of injury or death to persons caused by the intentional acts, unintentional acts or negligence of the Resident, his guest or invitees, or occurring on the premises rented for Resident's exclusive use. Resident releases Landlord from any and all liability for any loss or damage to Resident's property or effects arising out of water leakage, or breaking pipes, or theft, or other causes beyond the reasonable control of Landlord. . . . In no event shall resident be entitled to any compensation due to any extra expense, annoyance, or inconvenience for loss of use due to casualty beyond the control of the landlord. . . .

(Doc. 16-2 at 3, ¶ 16.) That same day, plaintiff moved into defendant's apartment complex. (Doc. 16 at ¶ 3.)

On April 25, 2006, plaintiff read through, agreed to, and initialed each page of an Apartment Lease Contract. (Id. at ¶¶ 6-8.) Paragraph 23 of the Apartment Lease Contract provides:

**23. RESIDENT SAFETY AND PROPERTY LOSS.**

...

Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. . . .

(Doc. 16-3 at 3, ¶ 23.)

Later that day, plaintiff read and signed several addendums, including a Community Policies, Rules and Regulations Addendum. (Doc. 16 at ¶¶ 9-10.) Paragraph 1 of the Community Policies, Rules and Regulations Addendum states:

**I. GENERAL CONDITIONS FOR USE OF APARTMENT PROPERTY AND RECREATIONAL FACILITIES.**

. . .

Additionally, Resident(s) expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's use of the amenities at the Community. Resident(s) agrees to hold Owner harmless and release and waive any and all claims, allegations, actions, damages, loses, or liabilities of every type, whether or not foreseeable, that Resident(s) may have against Owner and that are in any way related to or arise from such use. This provision shall be enforceable to the fullest extent of the law.

. . .

. . . The term "Owner" shall include the Management, officers, partners, employees, agents, assigns, Owners, subsidiaries, and affiliates of Owner.

(Doc. 16-4 at 1, ¶ 1.)

## V. DISCUSSION

Although disfavored, exculpatory clauses releasing a contracting party from future liability are not prohibited under Missouri law. Alack v. Vic Tanny Int'l of Mo., Inc., 923 S.W.2d 330, 334 (Mo. 1996) (en banc). That said, exculpatory clauses are "strictly construed against the party claiming the benefit of the contract, and clear and explicit language in the contract is required to absolve a person from such liability." Id. (citations omitted). "The exculpatory language must effectively notify a party that he or she is releasing the other party from claims arising from the other party's own negligence." Id. at 337. More specifically, the exculpatory clause must employ "clear, unambiguous, unmistakable, and conspicuous language in order to release a party from his or her own future negligence." Id. Consumer contracts must expressly contain words such as "negligence" or "fault" so that the waiver of liability is clear and unmistakable. Id.

The validity and application of an exculpatory clause is a question of law. Warren v. Paragon Techs. Group, 950 S.W.2d 844, 845 (Mo. 1997).

**A. Contract of Adhesion**

Plaintiff argues that the exculpatory clauses are not enforceable because they are contained in contracts of adhesion. (Doc. 21.) "An adhesion contract is typically a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording consumers a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form of contract. . . ." Woods v. QC Financial Services, Inc., 280 S.W.3d 90, 96-97 (Mo. Ct. App. 2008) (citations omitted). "[T]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms." Id. (citations omitted).

Adhesion contracts are neither "inherently sinister" nor "automatically unenforceable." Swain v. Auto Services, Inc., 128 S.W.3d 103, 107 (Mo. Ct. App. 2003). "Because the bulk of contracts signed in this country are form contracts, . . . any rule automatically invalidating adhesion contracts would be completely unworkable." Id. (citations omitted). Instead, the court must "seek to enforce the reasonable expectations of the parties." Id. The "reasonable expectations" test is objective, and "[o]nly those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable." Id.

Without conceding that the contracts are contracts of adhesion, defendant argues that, even if they are contracts of adhesion, the exculpatory clauses contained therein are enforceable. (Doc. 17 at 4-6.)

Defendant invokes Vergano v. Facility Management of Missouri, Inc., 895 S.W.2d 126 (Mo. Ct. App. 1995). In Vergano, the plaintiff was injured after falling at an ice skating rink in a venue operated by the defendant. The court held that an exculpatory clause in the parties' contract was enforceable, despite being contained in a contract of adhesion, because the terms of the contract were simple and clear; both parties could reasonably expect enforcement of its terms; the defendant had no reason to suspect the exculpatory clause would not have been knowingly agreed to under any circumstances; the plaintiff was

sufficiently educated and informed; and it was plaintiff's decision whether to enter into the contract. Vergando, 895 S.W.2d at 127-28.

Regarding the contracts at bar, there is no indication that the parties would not expect the terms of the contracts to be enforced. The terms of the contracts were simple and clear, and plaintiff is sufficiently educated and informed to enter into the contract. Defendant presumably believed that plaintiff knowingly agreed to the terms of the contract, and had no indication that plaintiff might object to the terms. (Doc. 16 at ¶¶ 10-15.)

Plaintiff argues that, although she signed the contracts, thereby expressly stating that she had read and understood each provision of the contracts, she did not actually understand all of the provisions, because she "essentially skimmed over the documents, reading them on a cursory basis." (Doc. 19, Hill Aff. at ¶¶ 5-6.) However, under Missouri law, "absent a showing of fraud, a party who is capable of reading and understanding a contract is charged with the knowledge of that which he/she signs." Gibson v. Adams, 946 S.W.2d 796, 803 (Mo. Ct. App. 1997). See also Nunn v. C.C. Midwest, 151 S.W.3d 388, 402 (Mo. Ct. App. 2004) ("A person signing an agreement has a duty to read it and, absent a showing of fraud, if the person is capable of reading and understanding the contract then he is charged with the knowledge of what the contract says. . . . He cannot avoid the consequences of what he signed by simply saying that he did not know what he signed.") (citations omitted). As previously discussed, plaintiff has sufficient knowledge and education to read and understand the contracts, and actually signed the contracts. (Doc. 16 at ¶¶ 4, 6, 8-15.)

Therefore, the exculpatory clauses are enforceable regardless of whether they are contained in contracts of adhesion.

**B. Scope of Exculpatory Clauses**

Defendant argues that the language of the exculpatory clauses is broad enough to include the alleged conduct, without being too broad as to be unenforceable. (Doc. 15 at 4-6.) Plaintiff argues that the clauses do not include the alleged conduct, and are otherwise inapplicable.

As defendant argues, the relevant exculpatory clause in paragraph 16 of the Agreement to Rent or Lease, which is entitled "Liability / Damage Responsibility," protects defendant from liability in three instances: where there is loss or damage to property, or there is personal injury or death to people "caused by the intentional acts, unintentional acts, or negligence" (1) of a resident, or (2) of a resident's guest or invitee, or (3) "occurring on the premises rented for Resident's exclusive use." (Doc. 16-2 at 3, ¶ 16.)

Construing plaintiff's state court petition broadly, plaintiff's allegations — that defendant "knew or should have known of the dangerous condition of the property" yet failed to "repair[] the condition" — sound in general negligence and premises liability. "Premises liability is triggered by assertions . . . that the cause of the injury or damage was an unsafe or defective condition of the property itself . . . [brought against] those who own or control the property." Haney v. Fire Ins. Exchange, 277, S.W.3d 789, 791 (Mo. Ct. App. 2009).

Plaintiff's allegations fall within the breadth of the third provision of this exculpatory clause because the alleged defective condition, inaction, and negligence were a result of defendant's "intentional acts, unintentional acts, or negligence" and occurred in plaintiff's apartment, which was rented for her exclusive use.

In addition, this portion of the exculpatory clause is enforceable despite any possible "latent ambiguities" created by its broad language. In Milligan v. Chesterfield Village GP, LLC, 239 S.W.3d 613, 616 (Mo. Ct. App. 2007), the plaintiff-lessee brought suit against her lessor after she was injured while escaping from a fire in her apartment building. The plaintiff-lessee alleged that the lessor negligently failed to adhere to city codes and apartment rules. The court upheld enforcement of an exculpatory clause that waived the lessor's future liability to the plaintiff-lessee for, *inter alia*, any damage or injury occurring on the leased premises "from any cause whatsoever, even if the cause or damages or injuries are alleged to be the fault or caused by the negligence or carelessness of the Lessor." The court reasoned that because the relevant portion of the exculpatory clause clearly, unambiguously, unmistakably, and conspicuously released the lessor from the alleged

negligence, any latent ambiguities created by the other language of the clause did not invalidate the express waiver from liability for the alleged conduct. <u>Milligan</u>, 239 S.W.3d at 616-21. <u>See also</u> <u>Vergano</u>, 895 S.W.2d at 127-28 (enforcing exculpatory clause waiving "all liability . . . caused by the negligence of [the defendant]").

Therefore, because the alleged negligence, inaction, and condition of the property are within the scope of the exculpatory clause, defendant is entitled to summary judgment.[1]

### VI. CONCLUSION

An appropriate Judgement Order is issued herewith sustaining the motion of defendant Lincoln Property Company for summary judgment (Doc. 14).

          /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on January 10, 2011.

---

[1] Because the relevant portion of this exculpatory clause is enforceable and shields defendant from the alleged liability, the court need not address the other two exculpatory clauses.